UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION
CIVIL ACTION NO. _____

**ELECTRONICALLY FILED**

SAMUEL JONATHAN SALADA,
Administrator ad litem of the ESTATE
OF JONATHAN MORGAN SALADA, Deceased                    PLAINTIFF

v.

CORECIVIC, INC. formerly d/b/a
CORRECTIONS CORPORATION OF
AMERICA, a Maryland corporation

      Serve:      CT Corporation System
                        300 Montvue Road
                        Knoxville, TN 37919-5546


CORECIVIC OF TENNESSEE, LLC

      Serve:      CT Corporation System
                        300 Montvue Road
                        Knoxville, TN 37919-5546

BLAIR LEIBACH, in both his
individual capacity and his capacity as Warden
of Trousdale Turner

      Serve:      Blair Leibach
                        5115 Harding Place
                        Nashville, TN 37211

ROBERT CHRISTIAN, in both his
individual capacity and his capacity as an
employee of Trousdale Turner

      Serve:      Robert Christian
                        140 Macon Way
                        Hartsville, TN 37074

KEITH HUGGINS, in both his
individual capacity and his capacity as an
employee of Trousdale Turner

       Serve:         Keith Huggins
                        140 Macon Way
                        Hartsville, TN 37074

NICK BATTEN, in both his
individual capacity and his capacity as an
employee of Trousdale Turner

       Serve:         Nick Batten
                        140 Macon Way
                        Hartsville, TN 37074

JUSTIN HOWELL, in both his
individual capacity and his capacity as an
employee of Trousdale Turner

       Serve:         Justin Howell
                        140 Macon Way
                        Hartsville, TN 37074

JESSICA POLK, in both her
individual capacity and her capacity as an
employee of Trousdale Turner

       Serve:         Jessica Polk
                        140 Macon Way
                        Hartsville, TN 37074

DERRICK SHORTER, in both his
individual capacity and his capacity as an
employee of Trousdale Turner

       Serve:         Derrick Shorter
                        140 Macon Way
                        Hartsville, TN 37074

CORRECT CARE SOLUTIONS, LLC

       Serve:         Corporate Creations Network, Inc.
                        205 Powell Place
                        Brentwood, TN  37027-7522

2

SHINDANA FEAGINS, in both her
individual capacity and her capacity
as medical personnel at Trousdale
Turner

Serve: Shindana Feagins
607 West Due West Avenue, Suite 113
Madison, TN 37115

SAMANTHA SMITH, in both her
individual capacity and her capacity
as medical personnel at Trousdale
Turner

Serve: Samantha Smith
101 Physicians Way, Ste. 111
Lebanon, TN 37090

SCOTT SCHUCH, in both his
individual capacity and his capacity
as medical personnel at Trousdale
Turner

Serve: Scott Schuch
140 Macon Way
Hartsville, TN 37074

CARLA J. FERRARO, in both her
individual capacity and her capacity
as medical personnel at Trousdale
Turner

Serve: Carla Ferraro
475 Scruggs Lane
Hartsville, TN 37074-3099

BETHANYE JONES, in both her
individual capacity and her capacity
as medical personnel at Trousdale
Turner

Serve: Bethanye Jones
445 Kyson Circle
Lafayette, TN 37083

3

ANGELICA GONZALEZ, in both her
individual capacity and her capacity
as medical personnel at Trousdale
Turner

   Serve:   Angelica Gonzalez
         140 Macon Way
         Hartsville, TN 37074

ARLIN STEFFANSON, in both his
individual capacity and his capacity
as medical personnel at Trousdale
Turner

   Serve:   Arlin Steffanson
         128 N. Hunter Road
         Portland, TN 37148

JACKSON RAY BURCH, in both his
individual capacity and his capacity
as medical personnel at Trousdale
Turner

   Serve:   Jackson Ray Burch
         125 Aaron Webb Road
         Smithville, TN 37166      DEFENDANTS

---

## COMPLAINT

---

## INTRODUCTION

  1.   Samuel Jonathan Salada, Administrator ad litem of the Estate of Jonathan Morgan

Salada, deceased, brings this action against CoreCivic, Inc., its subsidiary, its warden, certain of

its employees, and certain of its independent contractors, specifically Correct Care Solutions,

LLC, and their employees based upon their systemic violations of Jonathan Morgan Salada's

("Jonathan") constitutional rights while housed at Trousdale Turner Correctional Facility

("Trousdale Turner"), a privately owned prison.  To drive profits for its shareholders, CoreCivic,

4

Inc., Corecivic of Tennessee, LLC and Correct Care Solutions, LLC, negligently and intentionally understaffed Trousdale Turner, undertrained its workforce, failed to implement appropriate policies concerning medical treatment of inmates, failed to ensure that its employees and contractors were providing timely and appropriate medical services to its inmates, including Jonathan Salada. In conjunction with these failures, the individual defendants named herein were deliberately indifferent to Jonathan Morgan Salada's serious medical needs as a Type I Diabetic in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. All of this conduct, by both the entities and individuals, caused Jonathan Salada's pain and suffering and ultimate death. Therefore, his father and the administrator of his estate, Samuel Jonathan Salada, bring this Complaint under both 42. U.S.C. § 1983 and state law to recover for the damages these defendants have caused.

2. In this action Plaintiff seeks compensatory and punitive damages and other relief arising under 42 U.S.C. §§ 1983 and 1988, and the Eighth and Fourteenth Amendments to the United States Constitution, and state law claims to redress Defendants' unlawful and unconstitutional conduct. Defendants' actions as alleged herein, constituted, *inter alia*, deliberate indifference to Plaintiff's federally protected rights protected under the Eight and Fourteenth Amendment to the United States Constitution and in violation of state law. Plaintiff should be awarded compensatory and punitive damages, along with other relief, for these violations of Jonathan's federally protected constitutional rights and state law.

## JURISDICTION AND VENUE

3. This case presents an actual case and controversy arising under the Eighth and Fourteenth Amendments to the United States Constitution. This case also arises under the provisions of 42 U.S.C. §§ 1983 and 1988.

5

4.      Original jurisdiction over this case is conferred upon this Court pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and the United States Constitution because this case arises under the Constitution and laws of the United States.  Original jurisdiction over this case is also conferred upon this Court pursuant to 28 U.S.C. § 1343(a) because this action is to redress the deprivation by Defendants, under color of state law, of Plaintiff's rights, privileges and immunities secured by the United States Constitution and laws of the United States.

5.      This Court has jurisdiction over Plaintiff's Tennessee state law claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative facts with his federal claims.

6.      Trousdale County, Tennessee is the location of all acts pertinent to this suit, and venue is therefore proper in the Middle District of Tennessee, Nashville Division, under 28 U.S.C. § 1391 (b).

## PARTIES

7.      Jonathan Morgan Salada ("Jonathan") was a resident of Blount County, Tennessee, at the time of his death.  He was 25 years of age, having been born on January 8, 1992, and died on May 27, 2017.

8.      Samuel Jonathan Salada ("Samuel") was, at all relevant times, a citizen and resident of Warren County, Kentucky, and was Jonathan's father.  Pursuant to the Order of General Sessions Court for Blount County, Tennessee, Probate Division, dated November 16, 2017, Samuel has been appointed Administrator *ad litem* for the Estate of Jonathan Morgan Salada, deceased.  Attached as **Exhibit 1** to this Complaint is a copy of said Order.

9.      Defendant CoreCivic, Inc., a Maryland corporation, is a publically traded company on the New York stock exchange.  Through subsidiary entities, it owns and operates

prisons throughout the United States, including the Trousdale Turner Correctional Facility ("Trousdale Turner") in Trousdale County, Tennessee. CoreCivic, Inc. provides direct oversight, management services, and budgeting controls to each of its prison facilities, including Trousdale Turner. Additionally, CoreCivic, Inc. sets policies, customs, and procedures regarding the treatment and care of inmates that are applicable to all of its prison facilities, including Trousdale Turner.

10. Defendant CoreCivic of Tennessee, LLC, owns and operates the Trousdale Turner Correctional Facility under contract with the Tennessee State Department of Correction, housing prisoners sentenced to confinement in the Department of Correction. Upon information and belief, CoreCivic of Tennessee, LLC is owned by CoreCivic, Inc., which collectively will be referred to as "CoreCivic." Because CoreCivic operates a prison housing individuals under confinement by Tennessee's Department of Corrections, it performs a public function traditionally reserved to the state and is therefore subject to suit under 42 U.S.C. § 1983.

11. Defendant CoreCivic at all times mentioned herein, was responsible for the establishment of policies either formally or by custom and was responsible for the employment, training, supervision and conduct of the officers and employees of Trousdale Turner.

12. Defendant Blair Leibach was at all times mentioned herein acting individually and/or in his official capacity as Warden of Trousdale Turner, and as such established policies either formally or by custom and was responsible for the employment, training, supervision and conduct of the officers and employees of Trousdale Turner.

13. Blair Leibach is an adult citizen and resident of the State of Tennessee and at all times mentioned herein, based upon information and belief, was Warden of Defendant CoreCivic and was responsible for the guarding, supervision, safety and protection of the inmates at

Trousdale Turner, including Jonathan Salada.

14.     Upon information and belief, Blair Liebach, Robert Christian, Keith Huggins, Nick Batten, Justin Howell, Jessica Polk and Derrick Shorter (collectively, Named "Guard Defendants"), together with other unknown detention officers, worked at Trousdale Turner during May of 2017 and are collectively referred to herein as "Guard Defendants".  At all times relevant herein, the Named Guard Defendants were acting in the course of their official duties as guards or detention officers for CoreCivic and worked at Trousdale Turner acting under color of state law.  The Guard Defendants are being sued in their official and individual capacities.

15.     Upon information and belief, each of the "Guard Defendants" is an adult citizen and resident of the state of Tennessee and at all times mentioned herein was an employee of Defendant CoreCivic and was responsible for the guarding, supervision, safety and protection of the inmates of Trousdale Turner, including Jonathan Salada.  Each of the Guard Defendants breached their duties to Jonathan Salada and participated in the mistreatment of Jonathan Salada described below, either individually and/or in their official capacity.

16.     Defendant Correct Care Solutions, LLC, ("CCS") is an international, for-profit health care company based in Nashville, Tennessee, which has a division servicing state and federal correctional facilities.  CCS has contracted with CoreCivic to provide medical treatment to inmates who are incarcerated at Trousdale Turner.   Because CCS has accepted the responsibility for providing medical treatment to prisoners under confinement by Tennessee's Department of Corrections, it is a state actor subject to suit pursuant to 42 U.S.C. § 1983.

17.     Defendant CCS at all times mentioned herein was responsible for the establishment of policies either formally or by custom and was responsible for the employment, training, supervision and conduct of the health care professionals at Trousdale Turner.

18.     Upon information and belief, Defendants Shindana Feagins, M.D., Samantha Smith, Licensed Family Nurse Practitioner; Scott Schuch, Advanced Practice Nurse; Carla J. Ferraro, Registered Nurse; Bethanye Jones, Registered Nurse; Angelica Gonzalez, Registered Nurse; Arlin Stefffauson, Registered Nurse; and, Jackson Ray Burch, Licensed Practical Nurse (hereinafter collectively referred to as "Medical Defendants") were at all times mentioned herein medical professionals employed by CCS at Trousdale Turner, and participated in the mistreatment of Jonathan Salada described below individually and/or in their official capacity.

19.     Upon information and belief, each of the "Medical Defendants" is an adult citizen and resident of the state of Tennessee and at all times mentioned herein were employees of Defendant CCS and was responsible for providing medical care, services and/or treatment to inmates of Trousdale Turner, including Jonathan Salada.  Each of the Medical Defendants breached their duties to Jonathan Salada and participated in the mistreatment of Jonathan Salada described below, either individually and/or in their official capacity.

20.     Shindana Feagins is an adult citizen and resident of the State of Tennessee and is a licensed Medical Doctor specializing in internal medicine.  At all time mentioned herein, Dr. Feagins was responsible for providing medical care, services and/or treatment to inmates at Trousdale Turner, including Jonathan Salada.

## FACTUAL ALLEGATIONS

21.     Plaintiff incorporates by reference and re-alleges the allegation in the preceding paragraphs as if specifically set forth herein.

22.     Trousdale Turner Correctional Facility ("Trousdale Turner") began accepting inmates in January 2016, as a newly constructed facility located in Hartsville, Tennessee.

23.      Trousdale Turner is a medium security facility with a capacity of 2,552 male

inmates.

24.     On August 18, 2016, Jonathan Salada became an inmate and remained an inmate at Trousdale Turner until his death on May 27, 2017.

25.     Jonathan Salada was diagnosed as a Type 1 diabetic in February of 2015 and upon his transfer and relocation to Trousdale Turner in August of 2016, upon information and belief, each and every Defendant knew, or should have known, that Jonathan Salada was, in fact, a Type 1 diabetic and would be in need of appropriate and proper care while incarcerated at Trousdale Turner.

26.     Upon information and belief, at the time of Jonathan Salada's incarceration, each and every Defendant knew, or should have known, that Type 1 diabetes was a condition that if not treated appropriately and properly can cause serious injury and harm which can lead to death.

27.     Upon information and belief, at various times during his incarceration at Trousdale Turner, and specifically in May of 2017, Jonathan Salada did not receive appropriate or proper medical care in general and specifically, but not limited to, his Type 1 diabetes.

28.     Upon information and belief, on May 24, 2017, Jonathan Salada was laying on his cell floor screaming and crying in pain requesting medical treatment and assistance.  Jonathan Salada was ultimately taken to the medical infirmary where he did not receive the appropriate or proper medical care but was returned to his cell still in excruciating pain.

29.     Upon information and belief, on May 24, 2017, at approximately 23:45, a medical emergency was called to Jonathan Salada's cell where Plaintiff was still screaming in pain. Jonathan Salada was taken to the medical infirmary and admitted overnight.

30.     Upon information and belief, during the late night hours of May 24, 2017, and the early morning hours of May 25, 2017, Jonathan Salada was complaining of various health issues

and pain and suffering and was requesting medical care and treatment. Jonathan Salada's blood sugar was taken on May 24, 2017, at 23:45 and indicated that he had an unacceptable blood sugar level of 389. At 06:00 on May 25, 2017, labs indicated that Jonathan Salada had another unacceptable high glucose reading of 326.

31. Upon information and belief at 11:30 on May 25, 2017, against appropriate and proper medical care and treatment, Dr. Feagins ordered Jonathan Salada to be removed from Trousdale Turner's medical infirmary and returned to his cell, where he continued to complain of pain and suffering and continued to request medical care but said requests were ignored and no further medical care or treatment was provided.

32. At or about 08:40 on May 27, 2017, Jonathan Salada was found to be unconscious and unresponsive in his cell and a medical emergency was called for him.

33. During the emergency medical treatment administered to Jonathan Salada, his blood sugar reading was 587, another unacceptable level for a Type 1 diabetic.

34. Jonathan Salada was taken by EMS to Trousdale County Medical Center where he was pronounced dead at 09:34 on May 27, 2017.

35. Upon information and belief, despite all Defendants knowing Jonathan Salada was a Type 1 diabetic in need of medical treatment, each failed to heed Jonathan Salada's cries of pain and for help and did not provide appropriate and proper medical care and treatment, resulting in pain and suffering and his ultimate death.

36. Each and all Defendants had significant knowledge of the medical condition of Jonathan Salada and that his medical condition was severely life-threatening, yet they acted maliciously and/or with deliberate indifference to and in blatant disregard for Jonathan Salada's safety.

11

37.     Each of the Defendants' actions, inactions, malicious, deliberate indifference and intentional conduct violated certain clearly established, well settled and fundamental federal and state constitutional rights of Jonathan Salada, including but not limited to the following:

a.     The right to be free from cruel and/or unusual punishment;

b.     The right to due process of law before being deprived of his life;

c.     The right to adequate, necessary and emergency medical care while in custody;

d.     The right to due process under the Fourteenth Amendment; and,

e.     Such other unalienable rights retained by him, despite his status as a prisoner or inmate at Trousdale Turner.

## COUNT I
## NEGLIGENCE AND GROSS, WILLFUL AND WANTON NEGLIGENCE
## (GUARD DEFENDANTS, IN THEIR INDIVIDUAL CAPACITIES, CORECIVIC AND WARDEN LEIBACH)

38.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

39.     CoreCivic had a non-delegable duty to plan and provide adequate medical services and emergency medical services to protect the health and welfare of prisoners, including Jonathan Salada.  It breached that duty.

40.     CoreCivic and Warden Leibach owed a duty to prisoners in their custody, including Plaintiff, to properly supervise, hire, retain, manage, train and control the Trousdale Turner staff in the course and scope of the performance of their respective duties.  CoreCivic and Warden Leibach breached those duties.

41.     CoreCivic, Warden Leibach and the Guard Defendants owed a duty to Jonathan Salada to exercise ordinary care under the circumstances and they each breached this duty.

42.     CoreCivic, Warden Leibach and the Guard Defendants had a duty to Jonathan

Salada as their prisoner to provide adequate care and safeguard him from any dangers that they knew or should have known that Jonathan Salada faced; to ensure that Jonathan Salada was properly monitored and supervised so as not to be put in a position of foreseeable harm based on Jonathan Salada's medical condition; and, that any injuries, incidents, or medical emergencies were promptly detected, reported and medically treated as required by law. They breached this duty.

43. As alleged herein, CoreCivic, Warden Leibach and the Guard Defendants, were negligent and so reckless, wanton and indifferent to the needs and safety of Jonathan Salada as to constitute gross negligence.

44. Said breach of duties by CoreCivic, Warden Leibach and the Guard Defendants, were direct, proximate and foreseeable causes of Jonathan Salada's pain and suffering and ultimate death.

45. As a direct, proximate and foreseeable result of the negligent acts and omissions of the Defendants and their agents, servants, and employees as described herein, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional amount of this Court.

46. Plaintiff is entitled to recover punitive damages from the Guard Defendants because of the conscious, wanton, reckless and willful disregard of, and deliberate indifference to the safety of Jonathan Salada, as described herein, in an amount in excess of the minimum jurisdictional amount of this Court.

## COUNT II
### 42 U.S.C. § 1983 / EIGHTH AND FOURTEENTH AMENDMENT:
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### (NAMED GUARD DEFENDANTS AND NAMED MEDICAL DEFENDANTS
### IN THEIR INDIVIDUAL CAPACITIES)

47.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

48.     Said Guard Defendants and Medical Defendants acted individually under the color of state law, customs, practices, usage or policy at all times mentioned herein as guards, detention officers, doctors, nurses and/or such other personnel and/or employees and had certain duties imposed upon them with regard to Jonathan Salada.

49.     Said Guard Defendants and Medical Defendants violated Jonathan Salada's rights under the United States Constitution, including rights secured by the Eighth and Fourteenth Amendments, and/or federal law by intentionally, willfully, maliciously, and with conscious and deliberate indifference, failing to secure adequate and reasonable medical care to Jonathan Salada when they knew that Jonathan Salada faced a substantial risk of harm, and by disregarding such risk by failing to take reasonable measures to abate it, all of which were readily available.

50.     Said Guard Defendants and Medical Defendants all had actual and/or constructive knowledge that Jonathan Salada had serious medical needs and that by failing to adequately monitor and supervise Jonathan Salada, he was placed at an even greater risk of harm due to the resultant and foreseeable decline in his medical and/or physical condition.

51.     The right to reasonable medical treatment and to be protected from a substantial risk of harm are clearly established constitutional rights, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, and is a right which any reasonable guard,

detention officer, doctor or nurse in the position of each of said Guard Defendants and Medical Defendants would have known. As a result, the defense of qualified immunity is unavailable to, and has been waived by each of these Guard Defendants and Medical Defendants.

52. As a direct and proximate result of the deprivation of Jonathan Salada's constitutional and federal rights as alleged herein, Jonathan Salada suffered a slow and painful decline in his medical and physical condition and was in despair because his pleas for care and treatment were ignored, thus causing pain and suffering and ultimately his death. Consequently, Plaintiff, on behalf of Jonathan Salada's estate, is entitled to recover from each of said Guard Defendants and Medical Defendants, *in their individual capacities*, compensatory damages in an amount in excess of the jurisdictional amount of this Court.

53. Because said Guard Defendants and Medical Defendants' conduct was willful and wanton, malicious, oppressive and/or in reckless regard of Jonathan Salada's rights, punitive damages, in an amount to be determined by a jury, should be awarded to deter them, and others, from acting in a similar manner in the future.

## COUNT III
### 42 U.S.C. § 1983 / EIGHTH AND FOURTEENTH AMENDMENT: (WARDEN LEIBACH, CORECIVIC AND CCS)

54. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

55. Warden Leibach and CoreCivic were, at all times relevant herein, responsible for the formulation and execution of policies regarding the custody, care and safekeeping of inmates at Trousdale Turner.

56. Warden Leibach, CoreCivic and CCS were, at all times relevant herein, responsible for the formulation and execution of policies regarding the medical care provided to

inmates at Trousdale Turner.

57.     Upon information and belief, at all relevant times herein, Warden Leibach, CoreCivic and CCS, acting under color of state law, had in effect *de facto* policies, practices and customs that were a direct and proximate cause of the wrongful, unconstitutional and unlawful conduct of the guards or detention officers and doctors, nurses or other medical personnel working at Trousdale Turner as herein alleged, including, *inter alia:*

    a. The failure to adequately train, supervise, instruct or monitor the guards or detention officers and/or doctors, nurses, or other medical personnel assigned to Trousdale Turner in the proper method for evaluating inmates;

    b. The failure to adequately train, supervise, instruct or monitor the guards or detention officers and/or doctors, nurses, or other medical personnel assigned to Trousdale Turner in the proper methods for assisting and treating inmates with serious medical conditions;

    c. The failure to see that proper methods were being employed to evaluate the conditions of inmates at Trousdale Turner;

    d. The failure to see that proper methods were being employed to assist and treat inmates at Trousdale Turner with serious medical conditions;

    e. The failure to properly supervise the guards or detention officers and/or doctors, nurses, or other medical personnel assigned to Trousdale Turner;

    f. The failure to see that inmates at Trousdale Turner were supervised properly to maintain safe custody of such inmates at Trousdale Turner;

    g. The failure to see that the guards or detention officers and/or doctors, nurses, or other medical personnel assigned to Trousdale Turner supervised inmates

sufficiently to be at all times informed of the inmates general health and emergency medical needs;

h.  The failure to properly train and/or supervise the guards or detention officers and/or doctors, nurses, or other medical personnel so that inmates, including Jonathan Salada, were provided with appropriate and proper protection and care while incarcerated;

i.  In failing to draft and/or institute proper policies and/or procedures necessary to see that inmates were provided appropriate, necessary and adequate medical care and protection from emergency and perilous medical conditions;

j.  If such policies/procedures existed, in failing to follow them in providing for the appropriate and proper medical care and protection necessary to ensure Jonathan Salada's well-being;

k.  The failure to implement proper and reasonable policies and procedures regarding the evaluation, monitoring, supervision, observation and housing of inmates at Trousdale Turner, including, and especially, inmates diagnosed with Type 1 diabetes;

l.  The failure to see that guards or detention officers and/or doctors, nurses, or other medical personnel at Trousdale Turner complied with existing policies and procedures;

m.  The failure to see that guards or detention officers and/or doctors, nurses, or other medical personnel at Trousdale Turner complied with applicable statutes and administrative codes;

n.  The failure to see that guards or detention officers and/or doctors, nurses, or other

medical personnel at Trousdale Turner were not assigned other duties that would interfere with the continuous supervision, custody, or control of inmates; and,

o. Other policies, customs, and practices to be identified during the course of discovery and/or trial.

58. Upon information and belief, Warden Leibach, CoreCivic and CCS had actual and/or constructive knowledge that the guards or detention officers and/or doctors, nurses, or other medical personnel at Trousdale Turner were, and had been prior to May 27, 2017, engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to inmates such as Jonathan Salada.

59. Upon information and belief, Warden Leibach, CoreCivic and CCS responded to such actual and/or constructive knowledge, even after repeated instances of injury or death to other inmates, was so inadequate as to show deliberate indifference to or tacit authorization of the offensive practices described herein. In fact, by their conduct, Warden Leibach, CoreCivic and CCS created and encouraged a culture of neglect and indifference toward inmates at Trousdale Turner.

60. Upon information and belief, the misconduct of the guards or detention officers and/or doctors, nurses, or other medical personnel at Trousdale Turner, including, but not limited to the deprivation of the constitutional rights at Trousdale Turner and the failure to: properly monitor and supervise inmates, provide appropriate and proper medical care to inmates at Trousdale Turner, had occurred on multiple prior occasions and was so widespread at Trousdale Turner; that Warden Leibach, CoreCivic and CCS had actual and/or constructive knowledge of the multiple, documented and widespread violations and abuses by the guards or detention officers and/or doctors, nurses, or other medical personnel at Trousdale Turner, yet Warden

Leibach, CoreCivic and CCS took any steps to prevent such abuses.

61.     As a direct and proximate result of said policies, practices and customs, Jonathan Salada was denied his rights under the United States Constitution including rights secured by the Eighth and Fourteenth Amendments, and/or federal laws.

62.     The right to reasonable medical treatment and to be free from serious risk of harm are clearly established constitutional rights, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, and are rights which any reasonable guard or detention officer and/or doctor, nurse, or other medical personnel in the position of each of the Defendants would have known.  As a result, the defense of qualified immunity is unavailable to, and has been waived by Warden Leibach, CoreCivic and CCS.

63.     As a direct and proximate result of the deprivation of Jonathan Salada's constitutional and federal rights as alleged herein, while in the custody of Trousdale Turner, Jonathan Salada died a slow, painful, preventable and totally unnecessary death.  Consequently, Plaintiff, on behalf of Jonathan Salada's estate, is entitled to recover from Warden Leibach, CoreCivic and CCS compensatory damages in an amount in excess of the minimum jurisdictional amount of this Court.

## COUNT IV
## MALPRACTICE CLAIM
### (CCS, DR. FEAGINS AND MEDICAL DEFENDANTS)

64.     The Plaintiff, through counsel, complied with the provisions of Tenn. Code Ann. § 29-26-121(a) which requires that any person asserting a potential claim for health care liability shall give notice of such potential claim to each health care provider against whom such potential claim is being made at least sixty (60) days before the filing of a Complaint based upon medical negligence.

19

65.     On January 17, 2018, the Plaintiff, through his counsel, Kyle G. Bumgarner, of the firm of Kerrick Bachert, PSC, in Bowling Green, Kentucky, sent pre-suit written notice of claim letters to CCS and each medical personnel pursuant to Tenn. Code Ann. § 29-26-121, along with a HIPAA compliant medical authorization permitting all such medical Defendants to obtain copies of medical records from each other provider being sent a notice.  A true and correct copy of one of these letters is attached hereto as **Exhibit 2** and is incorporated herein by reference.

66.     In accordance with Tenn. Code Ann. § 29-26-122, attached hereto as **Exhibit 3** is a Certificate of Good Faith asserting that Plaintiff's counsel has consulted with one (1) or more experts who provided a signed written statement confirming that upon information and belief they (a) are competent under Tenn. Code Ann. § 29-26-115 to express opinions in this case; and, (b) believe, based on the information available from the medical records concerning the care and treatment of the Plaintiff for the incident at issue, that there is a good faith basis to maintain this action with the requirements of Tenn. Code Ann. § 29-26-115.

67.     Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 67.

68.     The relationship of physician-patient existed between Jonathan Salada and Dr. Feagins who was treating Jonathan Salada as a patient.

69.     There was a medical personnel-patient relationship between Jonathan Salada and all the other named medical personnel, all of whom were treating Jonathan Salada as a patient.

70.     Each of the medical Defendants owed a duty to Jonathan Salada to provide medical care and treatment that was consistent with the standard of care recognized in the medical community.  Each of the medical personnel Defendants breached this duty in the

following ways:

a.   by negligently failing to provide appropriate and proper medical care to Jonathan Salada;

b.   by negligently failing to properly and timely evaluate Jonathan Salada's medical needs;

c.   by negligently mismanaging Jonathan Salada's medical needs; and,

d.   by negligently violating the recognized standards of acceptable professional practice in their services for Jonathan Salada.

71.   Tenn. Code Ann. § 29-26-119 provides as follows:

In a health care liability action in which liability is admitted or established, the damages awarded may include (in addition to other elements of damages authorized by law) actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to, cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.

72.   CCS is vicariously liable under the laws of agency and *respondeat superior* for the acts and omissions of its agents (apparent and/or actual), members and/or employees who were negligent while acting within the course and scope of their employment and/or agency on behalf of CCS.   Any negligence of these agents (apparent and/or actual), members and/or employees, is imputed by law to CCS under the principals of actual or apparent agency and/or *respondeat superior.*

73.   Also, CCS was negligent in the hiring, supervising and retention of its agents (apparent and/or actual), members and/or employees and therefore is responsible for the actions of said medical providers.

74.   Each of the medical Defendants' failure to provide appropriate and proper medical care to Jonathan Salada were so grossly negligent, cruel, malicious and in reckless

disregard for his rights and life that same shows a deliberate indifference toward Jonathan Salada.

## DAMAGES

75.     As a direct and proximate result of each and all of the Defendants' above-described improper actions, Jonathan Salada sustained injuries to his body which led to his death, and his Estate has incurred the following damages:

    a.      Funeral and burial expenses;

    b.      Physical pain and mental suffering;

    c.      Destruction of earning capacity; and,

    d.      Loss of enjoyment of life.

76.     Finally, each of the Defendants' violations of Jonathan Salada's constitutional and common law rights were cruel, malicious, and evinced a total and reckless disregard for his life and those rights entitling Plaintiff to recover punitive damages from Defendants in order to deter such conduct in the future.

## ATTORNEY FEES

77.     As a result of Defendants' violations of the Civil Right Act of 1871, 42 U.S.C. § 1983 described herein and then enforcement of Plaintiff's rights under same, Plaintiff's counsel is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

78.     In addition, the Plaintiff seeks an award of reasonable attorney's fees for his counsel of record pursuant to Tenn. Code Ann. § 29-26-120.

**WHEREFORE**, Plaintiff requests the following relief:

1.      That he be allowed to file this Complaint, and that process issue to the Defendants, requiring them to respond within the time required by statute and under the Federal

Rules of Civil Procedure;

2.    That at the trial of this case, the Plaintiff have and recover a sum of money as compensatory damages, as well as punitive damages, in an amount to be determined by the jury;

3.    That a jury of six (6) be empaneled to hear and try this case;

4.    That Plaintiff be awarded reasonable attorney's fees as provided in Tenn. Code Ann. § 29-26-120 and pursuant to 42 U.S.C. § 1988;

5.    That Plaintiff have such further and general relief as to which he may be entitled, including costs of this cause; and,

6.    That Plaintiff respectfully reserves the right to amend the Complaint to conform to the evidence as it develops.

Respectfully submitted this May 14, 2018.


/s/ Larry L. Crain
Larry L. Crain/TN Bar No. 9040
Crain | Schuette Attorneys
5214 Maryland Way
Suite 402
Brentwood, TN 37027
Phone:  (615) 376-2600
Fax:  (615) 345-6009
Larry@CSAFirm.com
*Local Counsel for Plaintiff*


/s/ Thomas N. Kerrick
Thomas N. Kerrick/KY Bar No. 38265
Kyle G. Bumgarner/KY Bar No. 94389
Kerrick Bachert PSC
1025 State Street
Bowling Green, KY 42101
Phone: (270) 782-8160
tkerrick@kerricklaw.com
kbumgarner@kerricklaw.com
*Lead Counsel for Plaintiff*